UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BELLA AND ROSIE ROCK, LLC, A NEW JERSEY LIMITED LIABILITY COMPANY, | : : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 17-3628 (MCA) (MAH) |
| WE ROCK THE SPECTRUM, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; WRTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; MY BROTHER ROCKS THE SPECTRUM FOUNDATION, A CALIFORNIA CORPORATION; DINA KIMMEL, AN INDIVIDUAL; GAIL FIELD, AN INDIVIDUAL; JOHN DOES 1-10 AND ABC CORPS 1-10, | : : : : : : : : : : : : | OPINION |
| Defendants. | : : | |

## I. INTRODUCTION

This matter comes before the Court on Defendants' motion to dismiss or transfer, D.E. 5. The Court has considered the motion, opposition, reply, and applicable law. Pursuant to Federal Rule of Civil Procedure 78, the Undersigned did not hear oral argument and has considered this matter on the papers. For the reasons below, the Court will grant Defendants' motion and transfer this case to the United States District Court for the Central District of California.

## II. BACKGROUND

This matter arises from a franchise agreement between Defendant We Rock the Spectrum LLC (the franchisor) and Plaintiff Bella and Rosie Rock LLC ("BRR") (the franchisee), to open and operate a specialty gym for special needs children at 10 Franklin Turnpike, in Waldwick, New

Jersey. We Rock The Spectrum is a California limited liability company and its sole member is Defendant Dina Kimmel ("Kimmel"). Defendant WRTS, LLC is a California limited liability company whose sole member is also Kimmel. Plaintiff alleges that WRTS, LLC and We Rock The Spectrum have common ownership, and that We Rock The Spectrum is the successor-in-interest to WRTS, LLC. Complaint, D.E. 1, at ¶ 5.[1] Plaintiff alleges that Gail Fields is a WRTS representative who at one point owned a WRTS facility in Boca Raton, Florida. *Id*. at ¶¶ 30, 31. Plaintiff further alleges that Defendant My Brother Rocks the Spectrum is a California non-profit corporation. *Id*. at ¶ 3.

Defendant Kimmel opened up the first gym, called We Rock The Spectrum, in California in September 2010. Plaintiff alleges that WRTS began to sell franchises to operate children's gyms under the same name in October 2013. *Id*. at ¶¶ 11-14.

On January 6, 2016, BRR and WRTS entered into a Franchise Agreement to operate a We Rock The Spectrum gym in Bergen County, New Jersey. *Id*. at ¶ 19; *see also* Franchise Agreement, Declaration of Dina Kimmel ("Kimmel Decl.") Ex. A, D.E. 5-8 ("Franchise Agreement"). Dina Kimmel executed the Franchise Agreement on behalf of We Rock The Spectrum LLC. Kim Casey and Arnaud Casey executed the Franchise Agreement on behalf of BRR. Franchise Agreement, D.E. 5-8, at 49. The Franchise Agreement had a mediation clause which provided in pertinent part as follows:

> **Mediation**. Franchisor and Franchisee pledge to attempt first to resolve any dispute pursuant to mediation conducted in accordance with the Commercial Mediation Rules of the AAA unless Franchisor ad Franchisee agree on alternative rules and a mediator within fifteen (15) days after either party first gives notice of mediation. Mediation shall be conducted in Los Angeles County, California, and shall be conducted and completed within forty-five (45) days following the date either party first gives notice of mediation . . . .

---

[1] Plaintiff refers to both We Rock the Spectrum, LLC and WRTS LLC as "WRTS." For ease of reference, the Court will do the same.

Franchise Agreement § 23.1, at 45.  The Franchise Agreement also designated California as the forum for any litigation, and provided that California law would govern any such dispute.  That clause provided in pertinent part as follows:

> **Judicial Relief**.  Franchisor and Franchisee agree that (i) all disputes arising out of or relating to this Agreement shall be brought in the Superior Court of California, County of Los Angeles, or the United States District Court of the Central District of California ("Courts").  To the fullest extent that the parties may do so under applicable law, the parties waive the defense of inconvenient forum to the maintenance of an action in these Courts and agree not to commence any action of any kind except in these Courts.  California law shall govern the construction, interpretation, validity and enforcement of this Agreement, except to the extent the subject matter of the dispute arises exclusively under federal law, in which event federal law shall govern. . . .

*Id.* § 23.2, at 45-46.

The Bergen County, New Jersey We Rock The Spectrum location was set to open on August 13, 2016.  Complaint, D.E. 1, at ¶ 35.  But it appears that almost immediately, the relationship between the parties soured.  Plaintiff alleges that Kimmel and Field came to New Jersey to assist BRR with the opening of the gym, but that Kimmel was "unhelpful, demeaning and abusive" to the Caseys.  *Id*. at ¶¶ 35-36.

On September 2, 2016, WRTS served BRR with a default notice claiming BRR committed numerous breaches of the Franchise Agreement.  *Id*. at ¶ 40; *see also* Default Notice, Exhibit A to Certification of Kim Casey, ("Casey Cert."), D.E. 6-2.  These breaches include claims that BRR did not have a licensed contractor, that BRR was not in compliance with the Americans with Disabilities Act, and that BRR did not pay $1,500 to WRTS for Kimmel's travel expenses.  *Id.* at ¶ 40.  On September 28, 2016, WRTS served a Notice of Breach and Opportunity to Cure on BRR.  *See* Notice of Breach, Exhibit A to Declaration of Kasey Diba ("Diba Decl."), D.E. 5-3.  Plaintiff disputes those breaches, and claims that WRTS breached the Franchise Agreement by "failing to provide meaningful email and internet marketing support for the grand opening" and generally

failing to seek local media coverage or provide support and training. *Id*. at ¶¶ 41, 132.

On October 13, 2016, BRR's counsel sent a notice of rescission to WRTS's counsel. Certification of Kim Casey, July 24, 2017, Ex. B, D.E. 6-3 (notice of rescission). The notice stated that rescission was effective at 11:59 p.m. on October 13, 2016. It also demanded damages, including but not limited to any money that BRR had paid Defendants. According to BRR, Defendants failed to contest the rescission letter, and instead pursued mediation. In fact, WRTS petitioned the American Arbitration Association ("AAA") to pursue mediation, consistent with § 23.1 of the Franchise Agreement. *See* Diba Decl., D.E. 5-2, at ¶¶ 4-7. Although it appears that Plaintiff initially agreed to mediate, it reconsidered and filed the instant action in lieu of engaging in the AAA proceeding. *See* Casey Cert., D.E. 6-1, ¶ 15. BRR filed this action on May 19, 2017. *See* Complaint, D.E. 1.

The Complaint alleges that Defendants made myriad false representations designed to induce Plaintiffs to enter into the Franchise Agreement, made other false representations after the parties had entered into the agreement, and otherwise breached their obligations under the Franchise Agreement. Plaintiffs allege violations of the California Franchise Investment Law, Cal. Corp. Code §§ 31200-312002, the California Business and Professions Code, Cal. Bus. and Prof. Code § 17200 *et seq*., the New Jersey Franchise Practices Act, N.J.S.A. 56:101 *et seq.* ("NJFPA"), and common law.

Defendants now move to either dismiss or transfer this matter based on *forum non conveniens* and 28 U.S.C. §1404(a). *See generally* Movant's Brief ("Movant Br."), D.E. 5-1. Specifically, Defendants argue that (i) the forum selection clause is enforceable; and (ii) even if the forum selection clause is not enforceable, a traditional balancing of the factors under § 1404(a) favors transfer. BRR opposes the motion, and contends that because it rescinded the Franchise

Agreement, the forum selection clause is unenforceable. *See generally* Opposition Brief ("Opp'n Br."), D.E. 6.

### III. DISCUSSION

Title 28 Section 1404(a) of the United States Code provides that for the "convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) exists to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (internal citations and quotations omitted). The Third Circuit has recognized that the moving party bears the burden of establishing the propriety of transferring the case "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

The United States Supreme Court has instructed that if a contract contains a valid forum selection clause, then courts must "transfer the case unless extraordinary circumstances unrelated to the convenience of parties clearly disfavor a transfer." *See Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas,* 134 S. Ct. 568, 575 (2013). "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' under § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Id*. For this reason, the Supreme Court held that an enforceable forum selection clause can provide the basis for proper venue. *Id*. at 581. "[Because] the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (citations omitted). The proper inquiry in cases

with forum selection clauses is, therefore, to first examine the enforceability of the forum selection clause, and if so, next determine whether transfer is warranted based on a § 1404(a) analysis.

### A. RESCISSION

Plaintiff's primary argument is that the forum selection clause is unenforceable because Plaintiff rescinded the Franchise Agreement. Plaintiff argues that after it tendered the rescission letter, Defendants did not contest rescission and instead sought to mediate.

Defendants, however, argue that the forum selection clause is mandatory and clearly indicates the proper venue is California. Defendants contend that they did not agree to any contract rescission but instead sought to engage in mediation, as required by the Franchise Agreement's dispute resolution provision, and thereby manifested Defendant' understanding that the agreement was still in place. *See* Reply Brief, D.E. 9, 5-6.

Plaintiff's argument is unpersuasive. First, Plaintiff cites no legal authority to support its argument that rescission of an agreement necessarily renders the forum selection clause within that agreement void. In fact, most courts that have considered the issue have rejected Plaintiff's argument. For example, the court in *Wholesale Merch. Processing, Inc. v. Orion Commc'ns, Inc.*, No. 03:12-CV-02003, 2013 U.S. Dist. LEXIS 48962, at *4 (D. Or. Mar. 4, 2013), rejected this argument, reasoning:

> [Plaintiff] further argues [defendant's] alleged breach of the Agreement allows [plaintiff] to rescind the Agreement in its entirety, including the forum selection clause. The court agrees with [defendant] that this argument puts the proverbial cart before the horse. Whether [plaintiff] can rightfully rescind the Agreement is one of the questions that must be decided in this case. Interpretation of the forum selection clause is necessary to determine where the rescission claim will be tried.

*See also Starlight Co. v. Arlington Plastics Mach., Inc.,* No. C011121SI, 2001 U.S. Dist. LEXIS 7997, at *4 (N.D. Cal. June 8, 2001) (rejecting plaintiff's argument that allegations of rescission rendered forum selection clause unenforceable, stating "plaintiff presents no cases where a court

has rescinded an entire contract for the purposes of invalidating a forum-selection clause" and "[g]ranting a rescission of the Contract to invalidate the forum-selection clause would essentially give plaintiff the relief it seeks without requiring it to prove its case.").

Second, the language of the forum selection clause plainly encompasses these claims. The forum selection clause applies to "all disputes arising out of or relating to this Agreement[.]" Franchise Agreement § 23.2, D.E. 5-8, at 45-46. Here, Plaintiff seeks rescission as a remedy because, it claims, Defendants fraudulently induced it to enter into the Franchise Agreement. Complaint, D.E. 1, ¶¶ 87-91. As the court in *Starlight Co.* held, "[g]ranting a rescission of the Contract to invalidate the forum-selection clause would essentially give plaintiff the relief it seeks without requiring it to prove its case." 2001 WL 677908, at *4. Indeed, Plaintiff's entire case is based on the Franchise Agreement, including its claim for breach of contract and request for damages resulting from that alleged breach. Plaintiff cannot credibly argue that the Franchise Agreement is no longer operative, yet predicate at least some of its claims on that very agreement.

Finally, to the extent Plaintiff argues that Defendants somehow acquiesced to rescission by not adequately contesting it, that argument is also unpersuasive. Plaintiff is less than clear about what Defendants should have, or could have, done to contest the rescission letter. They also cite no legal authority for the proposition that Defendants waived enforcement of the forum selection clause by not taking other action. Moreover, it appears that Defendant acted consistently with § 23.1 of the Franchise Agreement by seeking to mediate the dispute.

This Court takes no position on whether Plaintiff ultimately will prevail on its claim for rescission. But Plaintiff has failed to provide any legal authority to establish that a unilateral claim of recession is sufficient to invalidate a forum selection clause. Thus, the Court must reject as premature Plaintiff's argument that the entire Franchise Agreement, and thus the forum selection

clause within it, is void by virtue of rescission.

### B. VALIDITY OF THE FORUM SELECTION CLAUSE

The Court must next determine whether the clause itself is valid. Federal law governs the enforceability of a forum selection clause in a diversity case like this one. *See Cadapult Graphic Systems, Inc. v. Tektronix Inc.,* 98 F. Supp. 2d 560, 563 (D.N.J. 2000) ("'In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law.'") (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 877 (3d Cir. 1995)). "It is well established that a forum selection clause is *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 356 (3d Cir. 1986) (quoting *The Bremen v. Zapatha Off-Shore Co.,* 407 U.S. 1, 10 (1972)). A forum selection clause is unenforceable only if a party establishes: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Ramada Worldwide Inc. v. SB Hotel Mgmt. Inc.,* No. 14-2186, 2015 WL 758536, at *3 (D.N.J. Feb. 23, 2015) (citations omitted). Accordingly, courts enforce forum selection clauses "unless the resisting party makes a strong showing that the clause is unenforceable." *Cadapult*, 98 F. Supp. 2d at 564 (citations and quotations omitted).

Plaintiff's primary argument as to why the forum selection clause is invalid is that it rescinded the Franchise Agreement. The Court has already rejected this argument above. Also, to the extent Plaintiff contends the forum selection clause is unenforceable because the Franchise Agreement was fraudulent, that argument also fails. The Supreme Court addressed this exact issue in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972), when it upheld the enforcement of a

forum selection clause despite allegations of fraud. The Supreme Court clarified that enforcing such clauses in light of allegations of fraud

> does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.

*Id*. at 519 n.14. Put another way, "the proper inquiry is whether the forum selection clause is the result of 'fraud in the inducement of the [forum-selection] clause itself.'" *Money Gram Payment Systems, Inc. v. Consorico Oriental, S.A.,* 65 Fed. Appx. 844, 847 (3d Cir. 2003) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967)). Here, however, Plaintiff has made no showing that its agreement to the forum selection clause itself was procured by fraud.

Plaintiff also argues that the forum selection clause is invalid because it has a claim under the NJFPA, which disfavors forum selection clauses. In *Kubis & Perszyk Assocs. v. Sun Microsystems, Inc.,* 146 N.J. 176, 195 (1996), the New Jersey Supreme Court held that when the NJFPA applies, "forum selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position." But the NJFPA applies only to

> a franchise . . . (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise.

*N.J.S.A.* § 56:10-4(a). The NJFPA requires all three elements to be met for a franchise to fall within its purview. *See B-Jays USA, Inc. v. Red Wing Shoe Company, Inc.,* No. 15-2182, 2015 WL 5896151, at *4 (D.N.J. Oct. 6, 2015); *see also Windsor Card Shops, Inc. v. Hallmark Cards, Inc.,* 957 F. Supp. 562, 569 n.11 (D.N.J. 1997) (finding that the plaintiff could not state a claim

under the NJFPA because it failed to satisfy all of the §56:10-4(a) requirements); *Finalay & Associates, Inc. v. Borg-Warner Corp.,* 146 N.J. Super. 210, 215-16 (Law Div. 1976) (requiring all three statutory conditions be established to obtain NJFPA protection).

Defendants argue that Plaintiff fails to meet the second prong because Plaintiff generated only $7,116.61 in total sales, which is well below the $35,000 threshold under N.J.S.A. § 56:10-4(a). *See* Sales Report, Kimmel Cert., Ex. C, D.E. 5-10. Plaintiff operated fewer than sixty days from its grand opening on August 13, 2016 until it issued the notice of rescission on October 13, 2016. *See* Complaint, D.E. 1, ¶¶ 35, 49.

Plaintiff does not dispute that it did not reach the required minimum, or contest the accuracy of the Sales Report reflecting these total sales. Instead, Plaintiff argues that had it not rescinded, its sales would have met or exceeded $35,000 after the first year. *See* Opp'n Br., D.E. 6, at 22. However, Plaintiff provides no authority that *projected* gross sales are sufficient to meet the $35,000 threshold under the NJFPA.[2] Plaintiff is thus limited to the gross sales calculated for the

---

[2] Although Plaintiff acknowledges there is no case directly on point with this argument, it cites to the dissent *Tynan v. General Motors Corp.* 248 N.J. Super. 654 (App. Div. 1991) as "instructive."

In *Tynan*, a former franchisee sought reimbursement under the NJFPA for warranty parts. The New Jersey Appellate Division held that former franchisees were "entitled to a statutory remedy if forced out of business based on the franchisor's violations of his rights under the Act." However, the court rejected the plaintiffs' claim for reimbursement under the NJFPA because it "was not asserted within a 12 month period during which [plaintiffs'] gross sales exceeded $35,000." The New Jersey Appellate Division further stated that the "complaint has to be filed within the time period permitted by [the NJFPA] . . ." *Id*. at 673.

The dissent disagreed, reasoning that the majority turned this provision into "a statute of limitation of capricious application." *Id*. at 674. The dissent stated that "[i]t is apparent that the $35,000 minimum was intended not to limit the time for suit but to measure the size of the businesses protected by the Act." *Id.* at 676. The dissent continued

> [the provision] requires only that the measurement of gross franchise businesses for the 12 months before suit be limited to ongoing franchises

last 12 months it existed, which in this case was $7,116.61 during its sixty days of operation. Therefore it appears to the Court that Plaintiff cannot show that it has reached the $35,000 threshold amount to receive protection under the NJFPA. The presumption of validity for forum selection clauses, therefore, remains in effect.

Plaintiff does not otherwise argue that the forum selection clause resulted in overreaching or fraud, or that enforcement of the clause would be contrary to public policy or result in litigation in a location so inconvenient as to be unreasonable. Plaintiff in fact advances no other reason the clause is unenforceable. Accordingly, the Court finds that Plaintiff has not met its burden of establishing that transfer to the forum indicated in the forum selection clause is unwarranted. Given the presumption of validity and the lack of any persuasive argument by Plaintiff to the contrary, the Court finds the forum selection clause is valid, mandatory[3], and enforceable.

---

that are in business when suit started. Businesses that have terminated before suit starts must have their gross sales calculated for the last 12 months they existed.

*Id*. The New Jersey Supreme Court adopted this dissent without elaboration, and reversed the Appellate Division. *Tynan v. General Motors Corp.,* 127 N.J. 269, 270 (1992).

Plaintiff here argues that "[t]here is little doubt that the New Jersey courts would find that the recession of the Franchise Agreement prior to the end of one year of operation does not lessen or undermine the rights and remedies due to plaintiff herein." Opp'n Br., D.E. 6, at 23. Plaintiff's reliance on *Tynan* is unavailing. The dissent and New Jersey Supreme Court's adoption of it simply stand for the proposition that the required minimum of $35,000 in gross sales in the twelve months preceding suit is not intended as a statute of limitations for filing suit. The dissent did not consider, much less conclude, that projected gross sales could count toward the $35,000 threshold. Therefore Plaintiff's reliance on the dissent in *Tynan* is without merit.

[3] Although Plaintiff does not contest that the forum selection clause's language is mandatory, the Court nevertheless finds that it is. When construing a forum selection clause, the court looks "to the text of the contract to determine whether it unambiguously states the parties' intentions." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1074 (3d Cir. 1997) ("To be 'unambiguous,' a contract clause must be reasonably capable of only one construction.") (citations omitted). A mandatory forum selection clause "identifies a particular state or court as

## C. §1404(A) CONSIDERATIONS

Having determined that the forum selection clause at issue is valid, the Court must next engage in a transfer analysis. Under a typical § 1404(a) analysis, courts must evaluate whether transfer is appropriate based on a series of private and public interest factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). However, when parties have agreed to a forum selection clause, as in this case, the Supreme Court has held that Courts must "adjust their usual Section 1404(a) analysis in three ways." *Alt. Marine Constr. Co.* at 581. First, the plaintiff's choice of forum holds no weight and plaintiff bears the burden of establishing that transfer to the agreed upon forum is unwarranted. *Id.* at 581-82. Second, when a party 'flouts' its contractual obligation under a forum selection clause and files suit in a different forum, "a 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 582. Third, the court should not consider arguments about the parties' private interest. As the Court stated in *Alt. Marine Constr. Co.*, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less

---

having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship." *Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech.,* 440 F. Supp. 2d 357, 363 n.1 (D.N.J. 2006) (internal citations and quotations omitted).

Here, the forum selection clause states "all disputes arising out of or relating to this Agreement shall be brought in the Superior Court of California, County of Los Angeles, of the United States District Court of the Central District of California . . ." Other than Plaintiff's rescission argument, which the Court has rejected, neither party argues that any other document supersedes, contradicts, or otherwise invalidates the Agreement or the clause itself. The Court finds, therefore, that this language clearly indicates a clear and mandatory forum selection clause indicating the required venue is exclusively either the Superior Court of California, County of Los Angeles, or the District Court of the Central District of California.

convenient . . ." *Id.* at 582. Consequently, the court may consider only arguments pertaining to the public interest factors. The Supreme Court has instructed, however, that "[b]ecause [the public interest] factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co.* at 582.

The public interest factors in a § 1404(a) analysis include:

> (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestions; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara,* 55 F.3d at 879.

Plaintiff's principal argument is that New Jersey has an interest in protecting franchises operating in the state, and that the NJFPA disfavors forum selection clauses. However, the Court has already considered Plaintiff's argument that the forum selection clause is unenforceable under the NJFPA. Plaintiff makes no other arguments regarding the remaining factors.

The Court's own analysis of the remaining factors concludes that they are neutral. Enforceability of the judgment, administrative difficulties and local interests all equally support California and New Jersey. Similarly, the relative administrative difficulties are the same in either forum and do not weigh heavily in either party's favor. Nor does one forum's local interest outweigh the others; California has an interest in regulating and protecting its corporations as does New Jersey. Moreover, the Complaint seeks relief under both California and New Jersey statutes. Also, each party's witnesses, books, and records are located primarily, if not exclusively, in that party's home state.

In sum, the applicable public interest factors in the Court's § 1404(a) analysis are neutral. In light of Plaintiff's heavy burden, the Supreme Court's instruction that the public interest factors

rarely merit keeping a case within a venue contrary to a valid forum selection clause, and the neutrality of the applicable public interest factors, the Court finds that Plaintiff has not met its burden to show that transfer to California is unwarranted.

### IV. CONCLUSION

Based on the foregoing, the Defendants' motion is granted insofar as it seeks transfer of venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). An appropriate order will accompany this opinion.

s/ Michael A. Hammer<br>
**UNITED STATES MAGISTRATE JUDGE**

Dated: February 13, 2018